**ORAL ARGUMENT HELD ON DECEMBER 1, 2023**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-5065

NATIONAL ASSOCIATION OF REALTORS,

*Petitioner-Appellee,*

*v.*

UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF JUSTICE, ANTITRUST DIVISION; JONATHAN KANTER, in his official capacity as Assistant Attorney General, Antitrust Division,

*Respondents-Appellants.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:21-cv-02406-TJK, Timothy J. Kelly, U.S. District Judge*

## PETITION FOR REHEARING AND REHEARING *EN BANC* FOR PETITIONER-APPELLEE NATIONAL ASSOCIATION OF REALTORS

ETHAN C. GLASS
COOLEY LLP
1299 Pennsylvania Avenue NW,
  Suite 700
Washington, DC 20004
Tel.: (202) 842-7800
Fax: (202) 842-7899
eglass@cooley.com

CHRISTOPHER G. MICHEL
MICHAEL D. BONANNO
WILLIAM A. BURCK
RACHEL G. FRANK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Tel.: (202) 538-8000
Fax: (202) 538-8100
christophermichel@quinnemanuel.com
mikebonanno@quinnemanuel.com
williamburck@quinnemanuel.com
rachelfrank@quinnemanuel.com

*Counsel for Petitioner-Appellee*

May 20, 2024



## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION AND RULE 35(b) STATEMENT ...........................................1

FACTUAL AND PROCEDURAL BACKGROUND ............................................3

REASONS FOR GRANTING REHEARING ........................................................7

I.  THE PANEL DECISION CONFLICTS WITH DECISIONS OF
    THIS CIRCUIT AND THE SUPREME COURT ........................................7

    A.  The Panel Decision Violated The Illusory Promises Doctrine ............7

    B.  The Panel Decision Violated The Party-Presentation Rule ...............10

    C.  The Panel Decision Misapplied The Unmistakability Doctrine .........12

II. THE PANEL DECISION HAS EXCEPTIONALLY IMPORTANT
    CONSEQUENCES .......................................................................14

CONCLUSION ..............................................................................17

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*,
  477 U.S. 41 (1986)......................................................................................12

*Diamond Walnut Growers, Inc. v. NLRB*,
  113 F.3d 1259 (D.C. Cir. 1997) ...........................................................2, 10, 11

*M&G Polymers USA, LLC v. Tackett*,
  574 U.S. 427 (2015)....................................................................................2, 7

*Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*,
  470 U.S. 451 (1985)....................................................................................15

*Niz-Chavez v. Garland*,
  593 U.S. 155 (2021)....................................................................................15

*Perry v. United States*,
  294 U.S. 330 (1935)......................................................................................3

*Puckett v. United States*,
  556 U.S. 129 (2009)..................................................................................3, 13

*Retail Clerks Int'l Ass'n Loc. No. 455, AFL-CIO v. NLRB*,
  510 F.2d 802 (D.C. Cir. 1975) .......................................................................8

*Santobello v. New York*,
  404 U.S. 257 (1971)....................................................................................13

*Sinking-Fund Cases*,
  99 U.S. 700 (1879)......................................................................................15

*United States v. Henry*,
  758 F.3d 427 (D.C. Cir. 2014) .....................................................................13

*United States v. Kansas Flour Mills Corp.*,
  314 U.S. 212 (1941)......................................................................................9

*United States v. Kanu*,
  695 F.3d 74 (D.C. Cir. 2012) ......................................................................2, 9

*United States v. Moreno-Membache*,
   995 F.3d 249 (D.C. Cir. 2021) .................................................................3, 8, 13

*United States v. Sineneng-Smith*,
   590 U.S. 371 (2020).................................................................................2, 12

*United States v. Stevens*,
   559 U.S. 460 (2010)....................................................................................10

*United States v. Winstar Corp.*,
   518 U.S. 839 (1996).........................................................................12, 13, 16

## Statute and Rules

Antitrust Civil Process Act, 15 U.S.C. § 1314(b)(2)...................................................4

Fed. R. App. P. 35.................................................................................................1, 2

Fed. R. App. P. 40.................................................................................................1, 2

## INTRODUCTION AND RULE 35(b) STATEMENT

Pursuant to Federal Rules of Appellate Procedure 35 and 40, the National Association of REALTORS® (NAR) petitions for panel rehearing and rehearing en banc. The divided panel's decision in this significant government-contract-interpretation case goes "where no court has gone before," directly conflicts with precedents of this Court and the Supreme Court, and will reshape the landscape for all "who find themselves on the other side of the bargaining table" with the government. Dissent Op. 13; *see* U.S. Chamber of Commerce Amicus Br. 9-10. Given those profound legal and practical stakes, the panel or the full Court should revisit the panel decision.

In the contract at issue, NAR agreed to change several policies in return for a promise from the Antitrust Division of the U.S. Department of Justice (DOJ) that it had "closed its investigation into" two other NAR policies. Panel Op. 6 (quoting J.A. 178). But eight months later—following a change in presidential administrations—DOJ resumed that same investigation. *Id.* at 2. DOJ did not purport to identify any changes in the law or facts; its only stated basis for resuming the investigation was "its preference to do so." *Id.* at 9 (citation omitted).

The district court granted NAR's petition to set aside the resulting Civil Investigative Demand (CID), explaining that DOJ's reading would make its commitment to close the investigation "a letter worth nothing but the paper on which

1

it was written." J.A. 271.  The panel majority, however, adopted the government's position that it retained full discretion to investigate NAR, even though DOJ had formed a binding contract to close its investigation in return for consideration.  Panel Op. 11.  As Judge Walker's dissent explained, "[n]o court identified by DOJ" has ever "endorsed such a reading" of a government contract—an interpretation that renders DOJ's promise "meaningless."  Dissent Op. 1, 10.

Rehearing is warranted because the panel's decision conflicts with at least three strains of Circuit and Supreme Court precedent.  *See* Fed. R. App. P. 35(b)(1), 40(a)(2).  First, by interpreting the contract to contain a promise that was illusory at the time of formation, the panel decision conflicts with basic contract principles articulated in (among other decisions) *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015), and *United States v. Kanu*, 695 F.3d 74, 78 (D.C. Cir. 2012).  Second, by relying on arguments that neither party presented, the panel decision conflicts with *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020), and *Diamond Walnut Growers, Inc. v. NLRB*, 113 F.3d 1259, 1263 (D.C. Cir. 1997) (en banc).  Third, by applying the government-favoring "unmistakability doctrine" to a settlement in which DOJ compromised only its own enforcement authority, the panel decision conflicts with myriad decisions applying neutral contract-interpretation principles to agreements resolving civil and criminal enforcement actions.  *See, e.g.*,

2

*Puckett v. United States*, 556 U.S. 129, 137 (2009); *United States v. Moreno-Membache*, 995 F.3d 249, 256 (D.C. Cir. 2021).

The panel's errors are far-reaching and exceptionally important. Every day, federal agencies resolve civil and criminal enforcement actions through agreements with private parties. It is a bedrock principle that the government must honor its word in those contracts, no matter who occupies the White House or leads the Antitrust Division. *See, e.g.*, *Perry v. United States*, 294 U.S. 330, 352 (1935). If the DOJ position adopted by the divided panel here—described by the nation's leading business advocacy organization as "remarkable" and "troubling," U.S. Chamber of Commerce Amicus Br. 1, 5—is ultimately accepted, "businesses and private citizens w[ill] be exposed to perpetual uncertainty regardless of the commitments or representations made by the Government in settling investigations," *id.* at 2. That result "undermines the rule of law and thus our system of government." *Id.* It is hard to imagine a worthier basis for rehearing and course correction by the Court that hears so many of the government's most significant contract disputes.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.**     In 2019, the DOJ Antitrust Division opened an investigation into certain NAR policies. J.A. 17. As part of that investigation, the Division issued CID No. 29935 seeking information on NAR's "Participation Rule" and CID No. 30360 seeking information on NAR's "Clear Cooperation Policy." J.A. 209-30, 244-45.

3

In fall 2020, NAR and DOJ agreed to resolve the investigation.  NAR agreed to accept a consent decree requiring it to modify four specified policies.  J.A. 17; *see* Panel Op. 4 & n.3.  In return, DOJ agreed to issue a closing letter stating that "the Antitrust Division has closed its investigation into the … Clear Cooperation Policy and Participation Rule" and "[a]ccordingly, NAR will have no obligation to respond to CID Nos. 29935 and 30360."  J.A. 178; *see* Panel Op. 6.

NAR complied with its obligations under the agreement, including by submitting proposed rule changes to DOJ for its review.  *See* J.A. 22-23. Nevertheless, eight months later—following a change in presidential administrations, and with a non-Senate-confirmed Acting Assistant Attorney General leading the Antitrust Division—DOJ withdrew from the consent decree, "resum[ed]" the same investigation that it had agreed to close, and sent NAR a CID (the "2021 CID") that sought the same information regarding the Participation Rule and Clear Cooperation Policy as the prior CIDs.  J.A. 61-71, 209-42, 266.  DOJ did not contend that those rules—or any other facts or law—had changed.  Nor did DOJ suggest that its withdrawal from the consent decree enabled it to resume the investigation.  DOJ instead took the position that its preference to resume its investigation alone authorized it to do so.  *See* J.A. 60; Panel Op. 9.

**B.**    NAR petitioned to quash the 2021 CID under the Antitrust Civil Process Act, 15 U.S.C. § 1314(b)(2), contending that it was barred by the parties'

settlement agreement.  J.A. 7-50.  The district court agreed, finding that "it is not hard to conclude the [2021] CID violates the agreement."  J.A. 270.  "Because the agreement included the Antitrust Division's commitment to close its investigation into NAR's current Participation Rule and Clear Cooperation Policy," the court reasoned, "the government breached the agreement by reopening the investigation into those same rules and serving the [2021] CID."  *Id.*

**C.**     On appeal to this Court, DOJ contended that its "promise … to close the investigation and rescind the CIDs left it free to resume the investigation and reissue the CIDs based solely on its preference to do so."  Panel Op. 9 (citation omitted).  Relying in part on the government-favoring "unmistakability principle," the panel majority accepted that position, reasoning that DOJ's promise to close the investigation in return for consideration from NAR included "no commitment …— express or implied—to refrain from either opening a new investigation or reopening its closed investigation."  *Id.* at 11-12.

The panel majority acknowledged that, under its interpretation, DOJ would have been free to resume the investigation *immediately after closing it*.  Panel Op. 15.  The majority observed, however, that DOJ's resumption of the investigation "occurred eight months after the original settlement agreement was reached," and declined "to consider th[e immediate-reopening] scenario."  *Id.* at 19-20.  The majority also repeatedly expressed its view "that the closing letter likely became

5

unenforceable" when DOJ unilaterally withdrew from the consent decree, but stated that it was accepting the parties' shared position that the settlement "is a binding agreement that remains enforceable." *Id.* at 10 & n.5; *see id.* at 19 n.8.

**D.**    Judge Walker dissented.  He explained that, based on DOJ's proposed interpretation of the settlement and argument before this Court, "the sole question is whether DOJ is correct that it could have immediately reopened its investigation of [the relevant NAR policies] after contracting to close that investigation."  Dissent Op. 4.  "Because DOJ's sole argument is wrong," he would have affirmed the district court's decision.  *Id.* at 5.

Specifically, Judge Walker explained that NAR's reading of the settlement was the only one in which "both sides of the exchange … have real meaning," as required by undisputed principles of contract law.  Dissent Op. 10.  "In contrast, DOJ's reading invests one side of the exchange with no real meaning at all"; under DOJ's position, accepted by the panel, NAR "gave up something (a lot, actually) in exchange for nothing more than a promise by DOJ to close an investigation it could immediately reopen."  *Id.*  Accepting that result, Judge Walker cautioned, required the panel majority "to go where no court has gone before—or at least no court identified by DOJ."  *Id.* at 13.

## REASONS FOR GRANTING REHEARING

The divided panel decision reflects serious legal errors on profoundly important questions. At bottom, the panel majority's decision allowed DOJ to extract meaningful consideration from a private party through a contract that required the government to provide nothing in return—a violation of basic contract-law principles. The majority attempted to justify that troubling and counterintuitive result by relying on arguments that DOJ did not present and extending the government-favoring unmistakability canon far beyond its permissible scope. As the district court, Judge Walker's dissent, and the U.S. Chamber of Commerce all independently recognized, acceptance of DOJ's position vests the government with unprecedented power to escape its contractual commitments at the expense of private parties. Particularly given this Court's distinctive responsibility to police the government's compliance with the law, such a roadmap for agency overreach warrants rehearing by the panel and the full Court.

## I. THE PANEL DECISION CONFLICTS WITH DECISIONS OF THIS CIRCUIT AND THE SUPREME COURT

### A. The Panel Decision Violated The Illusory Promises Doctrine

The "illusory promises doctrine" is a core feature of contract law recognized by both the Supreme Court and this Court. *M&G Polymers*, 574 U.S. at 440. "That doctrine instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration." *Id.*

7

(citation omitted); *see, e.g.*, *Retail Clerks Int'l Ass'n Loc. No. 455, AFL-CIO v. NLRB*, 510 F.2d 802, 806 n.15 (D.C. Cir. 1975) ("It is a settled rule of contract interpretation that contract language should not be interpreted to render the contract promise illusory or meaningless.") (citation omitted); *Moreno-Membache*, 995 F.3d at 256 (declining to read a plea agreement to contain only "a meaningless and valueless promise") (citation omitted).

The panel's interpretation of the parties' agreement violated the illusory promises doctrine because it "invest[ed] one side of the exchange with no real meaning at all." Dissent Op. 10. The agreement required consideration from NAR: entry into a consent decree compelling NAR to modify four policies that DOJ had identified. J.A. 162, 165. In exchange, DOJ agreed to close "its investigation into the … Clear Cooperation Policy and Participation Rule" and relieve NAR of its obligation to respond to the corresponding CIDs. J.A. 178. But, as construed by the panel majority, DOJ's agreement had no practical effect—and thus delivered no consideration to NAR—because it imposed no constraint on DOJ's investigatory authority. *See* Panel Op. 11-12 ("We discern no commitment by DOJ—express or implied—to refrain from either opening a new investigation or reopening its closed investigation, which might entail issuing new CIDs related to NAR's policies.").

Indeed, as Judge Walker's dissent explained—and as DOJ expressly recognized at argument—the government's interpretation of the agreement

8

necessarily means that DOJ could "*immediately* reopen its investigation" regardless of NAR's compliance with its side of the bargain.  Dissent Op. 1; *see id.* at 4 & n.6.  Put differently, DOJ enjoyed precisely the same degree of investigative discretion at the moment *after* it entered into the agreement as it had *before* it entered into the agreement.  From the perspective of the government's freedom to investigate—the only form of consideration that DOJ purported to provide NAR—the commitment to close the investigation was thus a nullity.  *See id.* at 10 (quoting J.A. 271).

The panel majority attempted to avoid that result by repeatedly emphasizing that DOJ did not actually reopen the investigation for eight months.  Panel Op. 2, 15, 19, 20.  But that is not how contract interpretation works.  Under controlling precedent, "contracts[] must be interpreted in light of the circumstances under which the agreement was made," not the circumstances that happen to later arise.  *Kanu*, 695 F.3d at 78 (citing *Nat'l Audobon Soc'y, Inc. v. Watt*, 678 F.2d 299, 307 (D.C. Cir. 1982)); *see, e.g.*, *United States v. Kansas Flour Mills Corp.*, 314 U.S. 212, 214 (1941) ("The contracts are to be construed in the light of the relations between the parties at the time they were executed.").  That principle reflects not only black-letter doctrine but also common sense.  A contract that lacks valid consideration at inception does not somehow gain it simply through passage of time.

Nor, as the government conceded, is there any plausible way to interpret the parties' agreement as having provided NAR with an eight-month reprieve from

investigation. *See* Dissent Op. 10 ("DOJ isn't arguing for an eight-month rule; rather, it argues that it can reopen a closed investigation immediately."). The panel majority's reliance on the fact that the government breached the contract eight months after entering it is thus a non-sequitur. It is no more legally relevant than a defense from a borrower who made payments on a 30-year mortgage for eight months before defaulting. And the panel majority's suggestion that NAR should be grateful the government waited as long as it did before it breached has no foundation in the parties' agreement or broader contract principles. The law of contracts, like the Constitution, "does not leave" private citizens "at the mercy of" the government's good will. *United States v. Stevens*, 559 U.S. 460, 480 (2010); *see id.* ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

### B.    The Panel Decision Violated The Party-Presentation Rule

The panel majority independently erred and contradicted precedent from this Court and the Supreme Court by relying on arguments that were not presented by the parties. It is a "well-established" rule that courts "do not consider arguments not presented to [them]," much less arguments that the parties expressly disavow. *Diamond Walnut*, 113 F.3d at 1263 (citation omitted).

The panel majority recited those principles, Panel Op. 10, but then violated them by declining to resolve—and even contradicting—DOJ's lone argument that a

proper interpretation of the agreement permitted it to reopen the investigation immediately after closing it. *See* Panel Op. 20 ("We … have no occasion to consider that scenario and we decline to opine on whether such conduct by DOJ would constitute a breach of the agreement."). Rather, as explained above, the panel majority purported to find consideration in the fact that DOJ did not resume its investigation for eight months. *Id.* at 19-20. But, as DOJ itself recognized, that theory has no foundation in the parties' agreement or basic contract principles and therefore cannot support a decision in its favor. *See* Dissent Op. 5 n.7 ("Th[e] 'immediately reopen' argument] is the *only* argument DOJ made on appeal. And if that argument isn't a winner, DOJ's appeal can't be a winner.") (citation omitted).

The majority further violated the party-presentation rule by repeatedly expressing its view "that the closing letter likely became unenforceable" when DOJ unilaterally withdrew from the consent decree. Panel Op. 10 n.5; *see id.* at 19 & n.8. As the majority acknowledged, DOJ did not raise, and in fact disclaimed, any potential argument about the unenforceability of the closing letter. *Id.* at 9-10. That issue was therefore not before the Court, and the Court had no basis to "consider" it. *Diamond Walnut*, 113 F.3d at 1263. But the majority repeatedly did consider it, not only laying out a theory of unenforceability across multiple lengthy footnotes but stating in the body of the opinion that because "reopening occurred eight months after the original settlement agreement was reached," the "reopening was not

11

'immediate' and there was never a time when NAR was bound by the settlement agreement while DOJ was not." Panel Op. 19. That approach does not fit the role of "neutral arbiter" that the Constitution and controlling precedents assign to the judiciary. *Sineneng-Smith*, 590 U.S. at 375 (citation omitted).

### C.     The Panel Decision Misapplied The Unmistakability Doctrine

The panel majority committed a significant additional error by applying the unmistakability doctrine—which directs courts to "not interpret a contract to cede a sovereign right of the United States unless the government waives that right unmistakably"—to the settlement agreement in this case. Panel Op. 12. The unmistakability doctrine arises from cases in which the government allegedly breached a contract as a result of a subsequent act of *legislative* power—e.g., when Congress changed the law in a way that affected contracts previously entered into by the Executive. *See United States v. Winstar Corp.*, 518 U.S. 839, 871-80 (1996) (plurality op.) (surveying the doctrine). In that rare fact pattern, the Court has required a contract to contain a clear statement of intent to relinquish sovereign authority as a means to protect "Congress' reserved power to alter the law." *Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 54 (1986).

It appears that neither the Supreme Court nor this Court has ever applied the unmistakability doctrine to a case in which a federal agency relinquished *its own* enforcement or investigative authority in settling a pending action. The panel

12

majority did not identify any such case, and the application of the unmistakability doctrine to this case was sufficiently unclear that DOJ did not even "raise the unmistakability principle before the district court." Panel Op. 13 n.6; *see id.* (determining that the doctrine "cannot be forfeited"). That is for good reason: the Supreme Court and this Court routinely review cases involving government settlements, plea bargains, consent decrees, and other enforcement-related agreements by applying ordinary "principles of contract law," not by placing a heavy thumb on the scale for the government. *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014); *see, e.g.*, *Puckett*, 556 U.S. at 137; *Santobello v. New York*, 404 U.S. 257, 262 (1971); *Moreno-Membache*, 995 F.3d at 256.

The panel majority's application of the unmistakability doctrine to the DOJ's resolution of its own enforcement action represents an "expansion of the unmistakability doctrine beyond its historical and practical warrant" of precisely the kind the Supreme Court has cautioned against. *Winstar*, 518 U.S. at 883 (plurality op.). If the doctrine applies to the settlement in this case, it presumably applies to every settlement agreement and plea bargain that the government enters. Reading all such agreements subject to a requirement that any promises by the government be unmistakably clear—as opposed to the best reading of the contract—would significantly alter the balance of power between regulators and the regulated,

13

particularly in the criminal arena.  This Court should not take such a drastic and unprecedented step without further review from the panel or the full Court.

## II.    THE PANEL DECISION HAS EXCEPTIONALLY IMPORTANT CONSEQUENCES

DOJ has recognized the significance of this case, and rightly so.  It and other federal agencies enter into vast numbers of agreements to settle civil and criminal litigation with private parties.  A disproportionate number of those agreements, including many of the most important ones, come before the courts of this Circuit given its location at the seat of the federal government.  The panel decision in this case creates multiple unprecedented advantages for the government in the interpretation of those contracts:  it enables the government to read a contractual promise to impose no meaningful obligation, it reads into the contract unstated favorable terms that even the government disclaimed, and it applies a government-favoring canon of construction in a way that would extend to every settlement agreement.  Each of those holdings is legally and practically significant in its own right; taken together, they make this the most consequential government-contract-interpretation case this Court has decided in many years.

The panel decision is especially consequential because its resolution of those critical contract-interpretation matters is wrong.  Not only do the panel's holdings conflict with precedent and settled doctrines of contract law, *see* Part I, *supra*, but they imperil the foundational principle the "United States are as much bound by their

14

contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies." *Sinking-Fund Cases*, 99 U.S. 700, 719 (1879). As the Supreme Court recently put it, "[i]f men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). The panel decision fails to hold the government to that standard.

The panel's acceptance of the government's position in this case is particularly troubling because DOJ openly sought to diminish the contractual promises made by—in its terminology—"the previous leadership of the Division," i.e., the Senate-confirmed Assistant Attorney General. Dissent Op. 2 n.1 (quoting DOJ Br. 11). That line of argument is not only wrong but alarming, particularly given that it was adopted by an unconfirmed Acting Assistant Attorney General. *See* U.S. Chamber of Commerce Amicus Br. 5 (describing as "remarkable" DOJ's "argument is that it can renege on its agreements (or artificially narrow them) simply because the Government has changed personnel"). Although a new administration is free to change the government's policies, it is not free to repudiate the government's contracts. *See Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 466 (1985) ("Policies, unlike contracts, are inherently subject to revision and repeal."). In our legal system, "[t]he government,

15

like any party, must be held to the terms of its settlement agreements, whether or not a new administration likes those agreements." J.A. 273.

The practical implications of the panel's position are profound. As the dissent aptly put it, the panel's decision permits the government to agree to "close" a case or investigation to "lure a party into the false comfort of a settlement agreement, take what it can get, and then reopen the investigation seconds later." Dissent Op. 13. That result will inevitably affect private parties' conduct going forward. If private parties "cannot trust that the Government will uphold its end of the bargain, they will be reluctant to enter agreements with the Government at all." U.S. Chamber of Commerce Amicus Br. 10; *cf.* Dissent Op. 13 ("**Buyer Beware.**"). The panel's position is thus not only contrary to law and fairness but "at odds with the Government's own long-run interest as a reliable contracting partner." *Winstar*, 518 U.S. at 883 (plurality op.). Rehearing is warranted to remedy that stark departure from the principle that the government must be bound by the word of its contracts.[*]

---

[*]    As Judge Walker's dissent noted, NAR recently entered into a settlement of private antitrust litigation pursuant to which NAR has committed to make future modifications of the Participation Rule. *See* Dissent Op. 12 & n.12. That settlement does not moot this case or diminish the need for further review. As an initial matter, NAR has not yet implemented any changes to the Participation Rule. In any event, the settlement does not address the Clear Cooperation Policy, and NAR has not changed that rule, so the contract-interpretation questions in this case will remain live and vitally important even after the Participation Rule is changed.

## **CONCLUSION**

The petition for panel rehearing and rehearing en banc should be granted.

Dated:  May 20, 2024

Respectfully submitted,

/s/ *Christopher G. Michel*

Ethan C. Glass
COOLEY LLP
1299 Pennsylvania Avenue, NW,
   Suite 700
Washington, DC 20004
Tel: (202) 842-7800
Fax: (202) 842-7899
eglass@cooley.com

Christopher G. Michel
Michael D. Bonanno
William A. Burck
Rachel G. Frank
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
1300 I Street, NW,
   Suite 900
Washington, DC 20005
Tel:  (202) 538-8000
Fax: (202) 538-8100
christophermichel@quinnemanuel.com
mikebonanno@quinnemanuel.com
williamburck@quinnemanuel.com
rachelfrank@quinnemanuel.com

*Counsel for Petitioner-Appellee*
*National Association of REALTORS®*

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,876 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportional typeface using Microsoft Word 2013 in 14-point Times New Roman font.

Dated: May 20, 2024

/s/ *Christopher G. Michel*
Christopher G. Michel
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW,
    Suite 900
Washington, DC 20005
(202) 538-8000

*Counsel for Petitioner-Appellee*
*National Association of REALTORS®*

18

## CERTIFICATE OF SERVICE

I, Christopher G. Michel, hereby certify that, on May 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Registered CM/ECF users participating in the case will be served by the appellate CM/ECF system.

May 20, 2024                    Respectfully submitted,


 /s/ *Christopher G. Michel*
Christopher G. Michel
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW,
  Suite 900
Washington, DC 20005
(202) 538-8000

*Counsel for Petitioner-Appellee*
*National Association of REALTORS®*

19