**ORAL ARGUMENT HELD DECEMBER 1, 2023**

**No. 23-5065**

In The

# United States Court of Appeals
# for the District of Columbia Circuit

NATIONAL ASSOCIATION OF REALTORS,

*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA, ET AL.,

*Respondents-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
(JUDGE TIMOTHY J. KELLY)

**RESPONSE OF THE UNITED STATES OF AMERICA,
ET AL., TO PETITION FOR REHEARING AND
REHEARING *EN BANC***

JONATHAN S. KANTER
*Assistant Attorney General*
DOHA G. MEKKI
*Principal Deputy Assistant
Attorney General*
DAVID B. LAWRENCE
*Policy Director*
MARKUS BRAZILL
*Counsel to the Assistant
Attorney General*
DANIEL E. HAAR
NICKOLAI G. LEVIN
STEVEN J. MINTZ
*Attorneys*
U.S. Department of Justice,
Antitrust Division
950 Pennsylvania Ave., NW, Rm. 3224
Washington, DC 20530-0001
Tel. 202-353-0256

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... i

TABLE OF AUTHORITIES ........................................................... ii

INTRODUCTION ......................................................................... 1

BACKGROUND ........................................................................... 3

ARGUMENT ............................................................................... 7

I.  The Panel Decision Is Correct And Does Not Conflict With Any
    Supreme Court Or Court Of Appeals Decision. ..................................... 8

    A.  The Panel Decision Does Not Violate The Illusory Promises
    Doctrine. .......................................................................... 8

    B.  The Panel Decision Does Not Violate The Party-Presentation
    Principle. ......................................................................... 12

    C.  The Panel Decision Rested On The Letter's Plain Language, Not
    The Unmistakability Canon of Interpretation—Which, In Any
    Event, Was Correctly Applied. ...................................................... 14

II. The Fact-Bound Panel Decision Will Not Have Broad Adverse
    Consequences. .................................................................... 19

CONCLUSION ............................................................................ 21

CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES ........ 23

CERTIFICATE OF COMPLIANCE ............................................... 25

CERTIFICATE OF SERVICE ..................................................... 26

# TABLE OF AUTHORITIES

**Cases:**

*Alliance to End Repression v. Chicago*,
  742 F.2d 1007 (7th Cir. 1984)................................................................. 16

*Arevalo v. Barr*,
  950 F.3d 15 (1st Cir. 2020) .................................................................... 21

*Community for Creative Non-Violence v. Pierce*,
  786 F.2d 1199 (D.C. Cir. 1986)............................................................. 15

*Diamond Walnut Growers, Inc. v. NLRB*,
  113 F.3d 1259 (D.C. Cir. 1997)............................................................. 13

*Evans v. City of Chicago*,
  10 F.3d 474 (7th Cir. 1993).................................................................... 17

*Ghaleb-Nassar Al-Bihani v. Obama*,
  619 F.3d 1 (D.C. Cir. 2010).................................................................... 14

*In re Application of United States Senate Permanent Subcommittee on Investigations*,
  655 F.2d 1232 (D.C. Cir. 1981)............................................................. 18

*Jenkins v. Tatem*,
  795 F.2d 112 (D.C. Cir. 1986)................................................................. 7

*Jolly v. Listerman*,
  675 F.2d 1308 (D.C. Cir. 1982)............................................................... 7

*M&G Polymers USA, LLC v. Tackett*,
  574 U.S. 427 (2015)............................................................................ 6, 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)............................................................................... 15

*National Audubon Society, Inc. v. Watt*,
  678 F.2d 299 (D.C. Cir. 1982)............................................................... 16

*United States v. Armour & Co.*,

402 U.S. 673 (1971)................................................................10

*United States v. Chemical Foundation, Inc.*,
    272 U.S. 1 (1926) ............................................................12

*United States v. Cherokee Nation of Oklahoma*,
    480 U.S. 700 (1987)..........................................................16

*United States v. Jones*,
    625 F.3d 766 (D.C. Cir. 2010)...........................................11

*United States v. Sineneng-Smith*,
    140 S. Ct. 1575 (2020) ....................................................12

*United States v. Winstar Corp.*,
    518 U.S. 839 (1996)...................................................15, 17

**Statutes:**

15 U.S.C. § 16(d)..................................................................5

15 U.S.C. § 1312(a) ............................................................12

15 U.S.C. §  16(b)-(h) ........................................................19

**Other Authorities:**

Authority of the United States to Enter Settlements Limiting the
    Future Exercise of Executive Branch Discretion,
    23 Op. O.L.C. 126 (1999) ...............................................18

Reopen, Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/reopen.........................................6

## INTRODUCTION

The appeal in this case presented only a "narrow" issue, Pet. ADD11, regarding the interpretation of the phrase "has closed" in a letter the Antitrust Division sent to the National Association of Realtors (NAR). NAR contended that when the Division informed NAR it "has closed" its investigation into two NAR rules and policies, the Division committed to *not* investigate whether those rules violated the antitrust laws indefinitely into the future. Based on the closing letter's "plain language," the panel held that the letter conveyed no such commitment. Pet. ADD2. And it found that "during the parties' negotiations, [the Division] explicitly declined to accept any agreement that constrained future investigations"—specifically, the parties' prior correspondence supported its interpretation, as the Division had repeatedly told NAR that it would not and could not "commit to never investigating or challenging NAR's rules and policies in the future." Pet. ADD4, 16 & n.7; *see* [JA252, 259].

Rehearing is not warranted. The panel's fact-bound decision is correct and does not conflict with any decision of the Supreme Court or any court of appeals—indeed, NAR itself suggests no conflict with any

1

other Circuit's precedents.  Moreover, the panel decision does not

violate any of the three legal doctrines NAR's petition invokes (Pet. 7-

17):  The decision does not implicate the "illusory promises" doctrine

because the panel found that the letter gave NAR significant benefits.

Pet. ADD17-18.  The panel expressly followed the "party-presentation

principle," "adopt[ing] the framing of the dispute that is advanced by

the parties."  Pet. ADD10.  And the panel's analysis rested on the plain

language of the letter, not the "unmistakability" canon of construction,

which the panel applied only to supplement the plain meaning (and was

in any event applied correctly).  Pet. ADD12-13.

       The panel decision also does not have the "exceptional

importance" NAR claims.  Pet. 14-17.  Because the decision is based on

the specific wording of the closing letter—and the unique facts and

circumstances at issue here—it will not have ramifications for parties

that deal with the government in different contexts.  Indeed, much of

the Petition is focused on a "hypothetical situation" regarding an

"immediate" reopening on which the panel expressly did not opine, Pet.

ADD18-20, and thus was not reached by the panel decision.

## BACKGROUND

In 2018, the Division opened an investigation into several potentially anticompetitive NAR rules and practices that effectively determine the processes by which home sales—and competition between real-estate brokers—occur in the United States.  In 2020, the Division began negotiating with NAR to resolve the Division's investigation into four specific rules and practices:  NAR's "Commission-Concealment Rules," "Free-Service Rule," "Commission-Filter Rules and Practices," and its "Lockbox Policy."  Pet. ADD4-5 n.3.

As part of that negotiation, NAR sought a promise by the Division not to investigate a different rule—NAR's "Participation Rule"—for ten years.  [JA247].  The Division rejected that proposal as "a nonstarter, especially in light of longstanding Department policies concerning settlements that affect future potential investigations."  [JA248].

Thereafter, NAR twice more asked the Division to promise not to investigate its Participation Rule, and each time the Division declined to so promise, stating unequivocally that it would not and could not (because of internal policies) "commit to never investigating or challenging NAR's rules and policies in the future."  [JA252, 259].

3

NAR thus finally "accept[ed]" that the Division could not so commit, [JA260] (NAR Aug. 18, 2020 letter); [JA126] (NAR Oct. 26 redline), and retreated to a narrower proposal:  that in addition to the negotiated consent decree on the four specified rules, the Division would send NAR a letter (i) confirming that the Division "has closed" its investigation into NAR's Participation Rule and Clear Cooperation Policy, and (ii) relieving NAR from having to respond to two Civil Investigative Demands ("CID") involving them.

On November 19, 2020, the Division sent the promised letter to NAR, stating:

> This letter is to inform you that the Antitrust Division has closed its investigation into [NAR's] Clear Cooperation Policy and Participation Rule.  Accordingly, NAR will have no obligation to respond to CID Nos. 29935 and 30360 issued on April 12, 2019 and June 29, 2020, respectively.

> No inference should be drawn, however, from the Division's decision to close its investigation into these rules, policies or practices not addressed by the consent decree.

Pet. ADD6.  The next day, NAR filed the letter in a pending private case against it in the Central District of California (challenging the Clear Cooperation Policy under the Sherman Act), claiming it showed that the Division was no longer investigating the policy.  Pet. ADD18.

Meanwhile, the Division submitted the proposed consent decree for review under the Tunney Act. *See* 15 U.S.C. § 16(d).  After receiving public comments on the proposed consent decree, the Division proposed modifications to the proposed consent decree to NAR, which NAR rejected.  On July 1, 2021, the Division exercised its unilateral right to withdraw from the proposed consent decree (for which the decree expressly provided).  Pet. ADD7.  In addition, the Division decided that it was necessary to reopen its investigation into several NAR rules and practices—including the four rules in the withdrawn consent decree, the Participation Rule, and the Clear Cooperation Policy—in light of evidence of their continuing threat of anticompetitive effects in the residential real-estate market.  Accordingly, the Division served a new CID on NAR, CID No. 30729.  Pet. ADD7.

NAR petitioned to set aside CID No. 30729, and the district court granted the petition.  The court reasoned that the November 2020 letter was part of a broader settlement agreement that precluded reopening the investigation.  [JA269-70].  In the court's view, "[o]pening an investigation is the opposite of closing one.  So by reopening the same investigation it had agreed to close, the Antitrust Division breached the

5

settlement agreement" [JA270].

A panel of this Court reversed in a 2-1 decision. The panel
majority (Judge Pan, joined by Judge Henderson) held that the plain
language of the November 2020 letter contains "no commitment by
DOJ—express or implied—to refrain from either opening a new
investigation or reopening its closed investigation[.]" Pet. ADD11-12.
The panel noted that the words "close" and "reopen" are
"unambiguously compatible," *id*. at ADD12 (citing *Reopen*, Merriam-
Webster Dictionary (legal definition) ("to resume the discussion or
consideration of (a *closed* matter)") (emphasis in original)), so the
Division's decision to reopen the investigation and issue a new CID
"was consistent with the closing letter's 'plainly expressed intent.'" *Id*.
(citing *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015)).
The panel further reasoned that the letter's plain meaning was
supported by the letter's no-inference clause in its final sentence, which
"confirms that DOJ did not intend to imply any additional terms in the
letter," *id*., and the unmistakability canon of construction, because the
letter "contains no 'unmistakable term' ceding DOJ's power to reopen
its investigation," as would be required under the canon. *Id*.

6

Judge Walker dissented, disagreeing that the plain language of the letter permitted reopening of the investigation.  Pet. ADD27-28.  He expressed concern that the government could, hypothetically, agree to close its investigation and reopen it "seconds later."  Pet. ADD34.  In response, the panel majority clarified that it was not reaching this "hypothetical situation" of "immediate" reopening, which was not presented by this case.  Pet. ADD19 ("We take no position on the hypothetical situation addressed by the dissent.").

## ARGUMENT

The panel decision is fact-bound and "narrow," Pet. ADD11, correctly relying on the plain language of the three-sentence letter.  The Petition does not identify any errors of law or fact meriting panel rehearing and falls far short of meeting the "demandingly high" standards warranting rehearing *en banc*, *Jenkins v. Tatem*, 795 F.2d 112, 114 (D.C. Cir. 1986); *see Jolly v. Listerman*, 675 F.2d 1308, 1311 (D.C. Cir. 1982) (two judges concurring in denial of rehearing *en banc*) ("So heavily fact-dependent a case is especially inappropriate for *en banc* review.").

7

## I.    The Panel Decision Is Correct And Does Not Conflict With Any Supreme Court Or Court Of Appeals Decision.

NAR's Petition does not claim that the panel decision conflicts with any other court of appeals decision addressing similar facts and circumstances.  Indeed, it does not even identify any holdings of the panel opinion it claims conflict with precedent of this Court or the Supreme Court.  Rather, NAR merely claims misapplication of three legal doctrines: the "illusory promises" doctrine, the "party-presentation" principle, and the "unmistakability" canon of construction.  Pet. 7-14.  But its arguments are unavailing: the panel decision does not violate either the "illusory promises" doctrine or the "party-presentation" principle, and the panel correctly applied the unmistakability canon as supplemental support for the letter's plain language.

### A.    The Panel Decision Does Not Violate The Illusory Promises Doctrine.

The illusory promises doctrine "instructs courts to avoid constructions of contracts that would render promises illusory because such promises cannot serve as consideration for a contract." *M & G Polymers*, 574 U.S. at 440.  Contrary to NAR's arguments (Pet. 7-10),

8

this doctrine has no bearing on this case because the panel's
interpretation of the letter does not render any promises illusory.

As the panel correctly found, the Division fulfilled its promise to
issue the November 2020 letter, which provided NAR with several
significant benefits:

- The letter confirmed that NAR did not have to respond to
  two pending CIDs (Pet. ADD17), saving it time and money;

- The Division's confirmation of closing gave NAR "value from
  the possibility that DOJ would not reopen its investigation
  at all, or for a substantial period of time" (*id.*);

- The Division's confirmation of closing enabled NAR to
  "avoid[] the risk that its responsive documents would be
  publicized in conjunction with a potential future complaint
  filed by DOJ" (Pet. ADD17-18); and

- NAR could *and did* use the letter to its advantage in private
  litigation by filing the letter the next day in a case in the
  Central District of California (Pet. ADD18).

Indeed, at oral argument, NAR's counsel conceded that the letter gave
NAR some benefit, including in its private litigation. Oral Arg. Tr.
14:24-15:3, 16:2-4.[1]

---

[1] NAR also reasonably expected several benefits from the proposed
consent judgment. By settling, NAR could avoid the "time, expense,

Although NAR complains that the panel's interpretation of the letter "imposed no constraint on DOJ's investigatory authority" (Pet. 8), the Division never agreed to that constraint—something it told NAR multiple times.  In response to the Division's repeated rejection of such a constraint, *NAR itself proposed* the narrow, backward-looking "has closed" language.  [JA109] (NAR Oct. 26, 2020, email).  Those were "the circumstances under which the agreement was made."  Pet. 9.

NAR may have wanted more from the letter than what it actually provided—including a forward-looking commitment—but that does not make the Division's promise to provide the letter illusory.  Unable to extract a commitment not to reinvestigate from the Division in negotiation, *cf. United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971) (consent decrees embody what "the respective parties have the

_____

and inevitable risk of litigation," *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).  Moreover, unlike a potential litigated final judgment, the proposed consent judgment was limited to a seven-year term and would not have collateral-estoppel effect against NAR in private litigation.  Although NAR ultimately did not receive those benefits after the Division exercised its right to withdraw from the proposed consent judgment (a risk NAR knew when giving the Division this express option), that withdrawal also relieved NAR of its burdens under the decree.

10

bargaining power and skill to achieve"), NAR cannot now read unstated terms into the letter's plain language to gain the exact same benefits the Division told NAR it would never grant.

NAR also repeats the dissent's assertion that the panel decision hypothetically could permit the Division to reopen its investigation immediately (Pet. 9). But the panel properly noted that this hypothetical issue was not before the Court, because the Division reopened the investigation eight months later. Pet. ADD15, 19-20. While such a hypothetical situation might raise a question as to whether the Division truly had closed its investigation, NAR acknowledged from the outset that "the Antitrust Division closed the investigations" in November 2020 [JA20-21]. In any event, a hypothetical implication of a panel decision, which the panel expressly does not reach, does not justify *en banc* review. *See United States v. Jones*, 625 F.3d 766, 767 (D.C. Cir. 2010) (three judges concurring in

denial of rehearing *en banc*) (panel decision expressly did not decide

hypothetical situation).[2]

## B.     The Panel Decision Does Not Violate The Party-Presentation Principle.

The "party presentation principle" provides that courts generally

rely on the parties' framing of the dispute in rendering decisions.

*United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).  But the

party-presentation principle does not support rehearing here because

the panel acknowledged and expressly followed the principle in

---

[2] NAR wrongly assumes that, under the panel's decision, the Division could reopen a closed investigation arbitrarily.  To issue a new CID, the Division must have "reason to believe that any person may be in possession, custody, or control of any documentary material, or may have any information, relevant to a civil antitrust investigation."  15 U.S.C. § 1312(a).  Contrary to the dissent's suggestion (Pet. ADD25 n.6), the Division's Reply Brief did not state otherwise.  The Reply Brief said (at 8) "the United States is permitted to open and conduct investigations at any time *within the requirements of the law*" (emphasis added), which this Court presumes the government will follow, *e.g.*, *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926) (discussing the "presumption of regularity").  The government's oral argument answers cited by the dissent in the same footnote likewise do not state that the Division could reopen arbitrarily, but only that the letter made no commitment to refrain from reopening.

reaching the decision, deciding only the "narrow" question "[a]s framed by the parties."  Pet. ADD10-11.

Again, NAR focuses on the hypothetical possibility of the Division's "immediately reopening" an investigation.  But, as the panel explained, that question was not presented because "the facts before us do not demonstrate an 'immediate' reopening," but instead a reopening after eight months.  Pet. ADD20.  Far from disregarding the party-presentation principle, the panel's choice not to venture beyond the facts before it respects that principle.  *See Diamond Walnut Growers, Inc. v. NLRB*, 113 F.3d 1259, 1263 (D.C. Cir. 1997) (en banc) (explaining that to consider a legal issue that is merely implied, but not squarely presented, would be inconsistent with the party-presentation principle).

NAR likewise goes astray in claiming that the panel violated the party-presentation principle by deciding whether the November 2020 letter was enforceable.  Pet. 11.  The panel expressly "accept[ed] the parties' apparent assumption that the closing letter is a binding agreement that remains enforceable, notwithstanding the withdrawal of the Proposed Consent Judgment."  Pet. ADD10.  And the panel "adopt[ed] that framing of the dispute" *precisely because of* the party-

13

presentation principle. *Id.*[3]

### C. The Panel Decision Rested On The Letter's Plain Language, Not The Unmistakability Canon Of Interpretation—Which, In Any Event, Was Correctly Applied.

NAR also is incorrect that the panel's use of the unmistakability canon of construction warrants rehearing. Pet. 12-14. The panel decision rested on "the plain language of the disputed 2020 letter," Pet. ADD2, 11, relying on the unmistakability canon only as supplemental support, *see id.* at 12 ("Our interpretation of the operative language is supported by . . . an interpretive canon of construction."). *En banc* review is not warranted for supplemental reasoning not essential to the decision. *See Ghaleb-Nassar Al-Bihani v. Obama*, 619 F.3d 1, 1 (D.C. Cir. 2010).

Moreover, the panel correctly applied the unmistakability canon. Under the canon, courts will not interpret a contract to cede a sovereign

---

[3] While the panel discussed the unenforceability issue in two footnotes, Pet. ADD10 n.5, 19 n.8, those discussions are clearly dicta, which does not justify *en banc* review. *See Ghaleb-Nassar Al-Bihani v. Obama*, 619 F.3d 1, 1 (D.C. Cir. 2010) (seven judges concurring in denial of rehearing *en banc* because the panel's discussion of the issue in question "is not necessary to the disposition of the merits").

right of the United States unless the government waives that right

unmistakably. *See United States v. Winstar Corp.*, 518 U.S. 839, 878

(1996) (plurality op.). Investigating potential unlawful conduct

indisputably is a sovereign act. *See Cmty. for Creative Non-Violence v.*

*Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986) (sovereign "power to decide

when to investigate, and when to prosecute"). Yet NAR contended that

the letter should be read as waiving the Division's power to

reinvestigate, despite the fact that the letter did not mention

reinvestigation, much less waive the Division's sovereign right in

"unmistakable" terms. The panel correctly rejected NAR's efforts to

read such a waiver into the letter, *cf. Mitsubishi Motors Corp. v. Soler*

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (the Court would

quickly condemn "a prospective waiver of a party's right to pursue

statutory remedies for antitrust violations" as "against public policy").

NAR contends, incorrectly, that the canon applies only to

subsequent acts of "legislative" power. Pet. 12. But the canon prevents

courts from implying into government agreements unstated terms that

would restrict "a subsequent sovereign act (*including* an Act of

Congress)." *Winstar*, 518 U.S. at 878 (plurality op.) (emphasis added).

15

The canon thus applies to more than legislative acts.  Indeed, numerous courts have applied the canon (in name or substance) to executive actions.  *See United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 706-07 (1987) (applying the unmistakability canon to the United States' retention of certain rights under a government treaty); *Nat'l Audubon Soc., Inc. v. Watt,* 678 F.2d 299, 301, 307 (D.C. Cir. 1982) (construing a stipulation in light of the absence of any clear indication that the agreement sought "to restrict [the Executive's] exercise of discretion"); *Alliance to End Repression v. Chicago*, 742 F.2d 1007, 1013-14 (7th Cir. 1984) (en banc) (refusing to read consent decree as inconsistent with a subsequent DOJ revision of the FBI's investigatory guidelines—a sovereign *executive* act).

The dissent likewise accepted that the unmistakability canon applied here; it merely found the canon satisfied (at least based on the hypothetical situation of immediate reopening).  *See* Pet. ADD32 (taking the view that "DOJ did unmistakably cede its right to immediately reopen its investigation").  As the majority noted, however, that reading was inconsistent with the letter's plain language, including

the no-inference clause, which "explicitly disclaims any intent to include unstated terms." Pet. ADD12-13.

NAR also overstates the practical effect of the panel's reliance on the unmistakability canon on future cases. Pet. 13. The canon arises infrequently in practice, for two principal reasons. First, the canon does not apply to many government contracts, such as commercial contracts, that do not concern sovereign rights. *See Winstar*, 518 U.S. at 880 (plurality op.) ("humdrum supply contracts" not subject to unmistakability). Second, courts typically construe contractual terms so as not to interfere with the government's exercise of a sovereign power, rendering the canon inapplicable. *See id.* at 881 ("the contracts have not been construed as binding the Government's exercise of authority to modify banking regulation or of any other sovereign power"); *Evans v. City of Chicago*, 10 F.3d 474, 478-80 (7th Cir. 1993) (en banc) (courts interpret consent decrees so as "to permit new public

17

officials to set their own policy within the limits established by federal law").[4]

Moreover, when applied to negotiated resolutions of litigation with the government, the unmistakably canon is usually satisfied. When the government intends to waive its right to prosecute or otherwise bind future government officials with respect to sovereign acts in plea agreements and consent decrees, a statement to that effect is usually made expressly in the agreement. For example, a model plea agreement that NAR submitted to the district court expressly provided that "the United States agrees that it will not bring further criminal charges" for specified past conduct. D. Ct. Doc. 21-13, at 26 (Nov. 12, 2021) (Exhibit L to NAR's reply); *see also* D. Ct. Doc. 21-12, at 3 (Nov. 12, 2021) (model leniency letter) (Exhibit K to NAR's reply) (containing similar language); *e.g.*, *In re Application of United States Senate*

---

[4] NAR's brief to the panel relied on an Office of Legal Counsel opinion. Br. 45. That opinion states "courts often construe the actual terms of executive branch settlements narrowly on the assumption that they are not intended to bind subsequent administrations and out of respect for executive branch prerogatives." Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion, 23 Op. O.L.C. 126, 146 (1999).

*Permanent Subcommittee on Investigations*, 655 F.2d 1232, 1238 (D.C. Cir. 1981) (government promised in plea agreement that it had "no intention of recommending any indictment").  The letter here, by comparison, lacked such an express statement.

## II.  The Fact-Bound Panel Decision Will Not Have Broad Adverse Consequences.

The panel decision is "narrow" and expressly limited to the specific, idiosyncratic circumstances here.  Pet. ADD11.  NAR's contention that the decision somehow will have sweeping consequences for other private parties when dealing with the government in other contexts is implausible.

Federal antitrust investigations and enforcement actions typically are resolved by a consent decree, without any letter like the one at issue here.  And those consent decrees, as in this case, are subject to a public comment and judicial review process under the Tunney Act, 15 U.S.C. § 16(b)-(h), to determine whether the agreed-upon relief is in the public interest.

NAR's unsupported rhetoric about the government repudiating its obligations and needing to turn "square corners" (Pet. 15) is question-begging, because it incorrectly assumes that the Division made a

19

promise to refrain from future investigation—which never occurred and is not reflected anywhere in the proposed consent decree or closing letter.  NAR's argument that the Division "sought to diminish" the promises made by the former administration fails for the same reason. Pet. 15.  To the contrary, the Division's position then and now is the same—that it would not and could not promise to refrain from future investigation because of internal policies against restricting the future exercise of prosecutorial discretion.

Finally, NAR's suggestion that the panel decision permits the government to "lure a party into the false comfort of a settlement agreement . . . and then reopen the investigation seconds later" (Pet. 16) is misplaced given the facts of this case.  The panel decision holds only that NAR is bound by the plain meaning of the "has closed" wording *that NAR itself proposed*, which contained no restriction on reinvestigation.  And the Division told NAR repeatedly that it never would (or could) agree to any restriction on future investigation, Pet. ADD4, 16 & n.7; *see* [JA248, 252, 259], and NAR "accept[ed]" that position, *see* p. 4, *supra*.  So, there was no false comfort here.  Nor did the Division reopen the investigation "seconds later," but rather eight

20

months later after re-evaluating the facts and the continuing anticompetitive effects of NAR's rules on the real-estate industry.[5] *Cf. Arevalo v. Barr*, 950 F.3d 15, 17 (1st Cir. 2020) (government exercised its "prosecutorial discretion" to close an immigration proceeding administratively, but later "the government rethought its earlier decision" and moved to reinstate the case).

## CONCLUSION

The Petition should be denied.

Respectfully submitted.

<u>/s/ Steven J. Mintz</u>
STEVEN J. MINTZ

JONATHAN S. KANTER
  *Assistant Attorney General*
DOHA G. MEKKI
  *Principal Deputy Assistant Attorney General*
DAVID B. LAWRENCE
  *Policy Director*
MARKUS BRAZILL
  *Counsel to the Assistant Attorney General*
DANIEL E. HAAR
NICKOLAI G. LEVIN

---

[5] The Division also received public comments on the proposed consent decree.

STEVEN J. MINTZ
  *Attorneys*
  U.S Department of Justice
  Antitrust Division
  950 Pennsylvania Ave., NW
  Room 3224
  Washington,DC 20530-0001
  Tel. 202-353-0256
  Email: steven.mintz@usdoj.gov

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

### A.    PARTIES, INTERVENORS, AND AMICI

All parties, intervenors, and amici appearing in the district court and in this Court are listed in the Petition of the National Association of Realtors.

### B.    RULINGS UNDER REVIEW

1.    The Order of the Hon. Timothy J. Kelly, entered on January 25, 2023, is reprinted in the Joint Appendix (JA) at [JA 262].  The Order is not published in the Federal Supplement.

2.    The Memorandum Opinion accompanying the Order, also entered on January 25, 2023, is reprinted at [JA 263-73].  The Memorandum Opinion has not been published in the Federal Supplement but is available electronically at 2023 WL 387572.

3.    The Panel Opinion, entered on April 5, 2024, is published in the Federal Reporter at 97 F.4th 951.

### C.    RELATED CASES

This case was not previously before this Court or any other court other than the district court.  This case is related to *United States v. National Ass'n of Realtors*, No. 1:20-cv-03356-TJK (D.D.C. filed Nov. 19,

23

2020), which was dismissed on July 1, 2021. Counsel for Respondents-Appellants is unaware of any other related cases pending in this Court or any court.

<u>/s/ Steven J. Mintz</u>
Steven J. Mintz

Attorney for Respondents-Appellants United States of America, et al.

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rules of Appellate Procedure 35 and 40 because it contains 3,869 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2010 in New Century Schoolbook font, size 14.

/s/ Steven J. Mintz
Steven J. Mintz

Attorney for Respondents-
Appellants United States of
America, et al.

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, I caused the foregoing

Response to Petition for Rehearing and Rehearing *En Banc* to be filed

through this Court's CM/ECF system.  All participants in the case are

registered CM/ECF users and will be served by the CM/ECF system.

/s/ Steven J. Mintz
Steven J. Mintz

Attorney for Respondents-
Appellants United States of
America, et al.

26